UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Cam-Sam Real Estate Holding, LLC,
       Plaintiff

       v.                                Case No. 18-cv-433-SM
                                         Opinion No. 2019 DNH 108

Merchants Mutual Insurance Company
and Hartford Fire Insurance Company,
       Defendants

Sentinel Insurance Company, Ltd.
a/k/a Hartford Fire Insurance Company,
       Counter Claimant and
       Third Party Plaintiff

       v.

Cam-Sam Real Estate Holding, LLC,
       Counter Defendant,

       and

D La Pooch Hotel, LLC, n/k/a
D La Pooch Resort, LLC, and
Lindsey Todt,
       Third Party Defendants

**O R D E R**

In this insurance coverage dispute, Merchants Mutual Insurance Company ("Merchants") seeks summary judgment on Cam-Sam Real Estate Holding, LLC's coverage claim. Cam-Sam objects. For the reasons discussed, Merchant's summary judgment motion is granted.

**Background**

Cam-Sam is the owner of a multi-unit commercial building and property located at 21 Londonderry Turnpike, Hooksett, New Hampshire. On June 2, 2016, Cam-Sam rented Unit 1 of the building to D La Pooch Hotel, LLC, ("D La Pooch") for a term of five years. D La Pooch operated a pet daycare and grooming business in the leased premises.

Cam-Sam alleges that D La Pooch caused extensive damage and contamination of Unit 1 by, <u>inter alia</u>, failing to properly clean up after the pets, and failing to exercise reasonable care in its use of the plumbing and water fixtures. Cam-Sam initiated eviction proceedings, and D La Pooch vacated the unit in August of 2017. Cam-Sam then discovered the extent of damage to Unit 1. The space was severely contaminated by pet urine and feces, and substantial damage had been caused by spillage/seepage from overflowing toilets. Substantial repairs were required including: removal of all building materials from Unit 1 down to the shell; remediation of odor, mold, and bacteria in the air and duct systems; and shot blasting the concrete floor to remove embedded odors.

At all relevant times, Cam-Sam was insured under a commercial general liability policy issued by Merchants Mutual, (Policy No. CMP9153278 (the "Policy")), pursuant to which

Merchants agreed to "pay for direct physical loss of or damage to Covered Property at the premises . . . caused by or resulting from any Covered Cause of Loss." Document No. 34-3, p. 12.

Cam-Sam filed suit against D La Pooch, and brought this declaratory judgment action seeking coverage under its policy with Merchants Mutual. Cam-Sam also filed suit against Sentinel Insurance Company, Limited (D La Pooch's insurance provider), seeking to recover under its insurance. Merchants seeks summary judgment, contending that its policy does not provide coverage with respect to the damages described in Cam-Sam's complaint.

## **Legal Standard**

When ruling on a motion for summary judgment, the court must "constru[e] the record in the light most favorable to the nonmoving party and resolv[e] all reasonable inferences in that party's favor." Pierce v. Cotuit Fire Dist., 741 F.3d 295, 301 (1st Cir. 2014). Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this context, "[a]n issue is 'genuine' if it can be resolved in favor of either party, and a fact is 'material' if it has the potential of affecting the outcome of the case." Xiaoyan Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir. 2016) (citations and internal punctuation

omitted).  Nevertheless, if the non-moving party's "evidence is merely colorable, or is not significantly probative," no genuine dispute as to a material fact has been proved, and "summary judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted).  In other words, "[a]s to issues on which the party opposing summary judgment would bear the burden of proof at trial, that party may not simply rely on the absence of evidence but, rather, must point to definite and competent evidence showing the existence of a genuine issue of material fact."  Perez v. Lorraine Enterprises, Inc., 769 F.3d 23, 29-30 (1st Cir. 2014).

The key, then, to defeating a properly supported motion for summary judgment is the non-movant's ability to support his or her claims concerning disputed material facts with evidence that conflicts with that proffered by the moving party.  See generally Fed. R. Civ. P. 56(c).  It naturally follows that while a reviewing court must take into account all properly documented facts, it may ignore a party's bald assertions, speculation, and unsupported conclusions.  See Serapion v. Martinez, 119 F.3d 982, 987 (1st Cir. 1997).

**Discussion**

Merchants denied coverage in this case based upon several Policy exclusions.

**1. "Wear and Tear" Exclusion**

Merchants first notes that the Policy specifically excludes coverage for loss or damages "caused by or resulting from" "[w]ear and tear." Document No. 34-3, p. 52, Exclusion 2(d)(1). According to Merchants, such wear and tear includes both the alleged "residual odor," Compl. ¶ 14, and damage from water spillage. Those damages, says Merchants, are exactly the type of "wear and tear" one would expect from a dog-grooming operation.

Cam-Sam disagrees, pointing out that Unit 1 was damaged well beyond what any normal operation would be expected to occasion. The Unit was contaminated to the degree that only gutting and rebuilding could mitigate the damage. "Wear and tear," says Cam-Sam, refers to expected and anticipated routine maintenance, like cleaning carpets and repainting walls, not a complete structural rehabilitation of the premises. Merchants responds that Cam-Sam's position improperly limits the wear and tear exclusion to "normal" wear and tear, adding words that do not appear in the Policy.

5

The Policy does not define the phrase "wear and tear." "Where disputed terms are not defined in the policy, the court construes them 'in context, and in the light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured.'" Catholic Med. Ctr. v. Fireman's Fund Ins. Co., No. 14-CV-180-JL, 2015 WL 3463417, at *3 (D.N.H. June 1, 2015) (quoting Great Am. Dining v. Philadelphia Indem. Ins. Co., 164 N.H. 612, 625 (2013)). The Court of Appeals for the First Circuit construed the phrase "wear and tear" in Moran Towing Corp. v. M. A. Gammino Const. Co., 363 F.2d 108, 114 (1st Cir. 1966), as follows:

> Wear and tear means normal depreciation. No doubt what is 'normal' must be responsive to practices in the service for which the vessel is intended. . . . The effects of negligence are not wear and tear, and they do not become wear and tear merely because they may be anticipated.

(internal citations omitted). See also Black's Law Dictionary (10th ed. 2014) (defining "wear and tear" as "[d]eterioration caused by ordinary use; the depreciation of property resulting from its reasonable use").

Merchants is correct that some odor permeation and water damage might be expected when leasing premises to a pet grooming service. But, as Cam-Sam points out, that Unit 1 required

6

complete gutting and rebuilding suggests a different degree of loss. Such facts suggest the property damage cannot be fairly characterized as the result of "ordinary" use: "wear and tear" simply does not mean "total destruction." However, the record as it stands is not sufficiently developed to determine what, if any, subset of the alleged damages is properly attributable to "wear and tear," or ordinary use. Accordingly, summary judgment based on the "wear and tear" exclusion is not appropriate.

**2. Animal Waste Exclusion**

Merchants next argues that the Policy's exclusion for loss or damages resulting from or caused by "nesting or infestation, or discharge or release of waste products or secretions by insects, birds, rodents or other animals" (the "Animal Waste exclusion") applies, and bars coverage. Document No. 34-3, p. 52, Exclusion 2(d)(5). Merchants says that dog urine and feces "unquestionably" fall within the definition of "waste products or secretions by . . . other animals," given the obvious facts that dogs are animals, and urine and feces are animal waste products. Merchant's Mem. in Support of Summary Judgment at p. 6.

Cam-Sam takes the position that Merchants reads the Policy's exclusion too broadly, and in a manner inconsistent with the Policy's purpose. The Policy is intended, Cam-Sam

7

argues, to provide coverage for damage done to property that is not within the landlord's control, including, without limitation, damage done by tenants. Consistent with that purpose, Cam-Sam contends, the Animal Waste exclusion applies only when damages are caused by pest or wildlife infestations, not domestic animals, and not animal related damage brought about by human negligence and failure to manage animals under human control and care. Here, Cam-Sam says, the damage was plainly not caused by pests infesting the property, rodents leaving droppings, or insects destroying building materials, all of which would fall within the exclusion. Instead, the damage was caused by D La Pooch's employees' negligent operation of the business: "Dog feces merely happened to be involved in those business operations." Cam-Sam Obj. to Merchant's Mot. for Summary Judgment at p. 6. At the least, Cam-Sam contends, the Animal Waste exclusion is ambiguous, and ought to be construed in the insured's favor to provide coverage.

"The fact that the parties may disagree on the interpretation of a term or clause in an insurance policy does not necessarily create an ambiguity." Russell v. NGM Ins. Co., 170 N.H. 424, 429 (2017) (quoting Bartlett v. Commerce Ins. Co., 167 N.H. 521, 531 (2015)). "For an ambiguity to exist, the disagreement must be reasonable." Id. Given the clear language

8

of the Policy, Cam-Sam's argument is unpersuasive, as no ambiguity exists.

Cam-Sam's complaint asserts that "building materials comprising D La Pooch's leased premises were contaminated with dog urine and feces." Comp. ¶ 14(b). The resulting odor necessitated shot blasting the concrete floor, and remediating odor and bacteria in the air and duct system. So, Cam-Sam has alleged that the leased premises were, at least in part, damaged by dog waste and secretions. The source of the waste and secretions at issue was "other animals." The Policy language provides, categorically, that damages resulting from animal waste and secretions are excluded from coverage. Dogs are animals. Given the Policy's broadly worded exclusion, Cam-Sam could not have reasonably understood the Policy to insure against damages to the premises resulting from dog urine and feces. See Santos v. Metro. Prop. & Cas. Ins. Co., 201 A.3d 1243, 1247 (N.H. 2019) ("when the policy language is clear, this court will not perform amazing feats of linguistic gymnastics to find a purported ambiguity simply to construe the policy against the insurer and create coverage where it is clear that none was intended.") (citing Russell, 170 N.H. at 429)).

Cam-Sam's argument that the animal waste was not the direct and immediate cause of the damages (but rather the damage was

9

caused by negligent D La Pooch employees) does not alter the analysis. The Policy unambiguously provides that Merchants "will not pay for loss or damage caused directly <u>or</u> <u>indirectly</u> by any of the following. Such loss or damage is excluded <u>regardless</u> <u>of</u> <u>any</u> <u>other</u> <u>cause</u> or event that contributes concurrently or in any sequence to the loss." Document No. 34-3, p. 50 (emphasis added). So, to the extent the damage alleged by Cam-Sam was caused, <u>even indirectly</u>, by dog "discharge or release of waste products or secretions," that damage is not covered by the Policy.

In sum, property damage caused by or that resulted from animal waste and secretions are excluded from coverage under the Policy's terms. However, as Cam-Sam points out, even if the animal waste exclusion does apply, it has alleged other causes of damage besides animal waste, specifically: water damage, mold, and bacteria. Therefore, the court's determination concerning the applicability of the Animal Waste exclusion does not fully resolve the dispute.

**3. Water Damage**

Merchants takes the position that any damages caused by water are also excluded from coverage. The Policy provides some coverage for water damage. <u>See</u> Document No. 34-4, p. 58. "Water damage" is defined by the Policy, in relevant part, as:

10

> Accidental discharge or leakage of water or steam as a
> direct result of the breaking apart or cracking of a
> plumbing, heating, air conditioning or other system or
> appliance . . . that is located on the described
> premises and contains water or steam.

Id., at p. 59. Merchants argues that, as pled, Cam-Sam's damages do not fall within that definition, because Cam-Sam has not alleged that its damages were caused by the "accidental" discharge or leakage of broken plumbing or other water-containing systems.

The court agrees. Cam-Sam alleges, essentially, that water damage was caused by D La Pooch's "failure to properly contain or manage its water use," including misuse of the toilet system, resulting in blockages and overflows that were then not properly managed, and failure to exercise proper care in dog bathing operations. Those damages fall outside the Policy's definition of "water damage," and are not covered by the Policy. While water damage resulting from overflowing toilets might present a closer call, those damages fall outside the Policy's coverage as well.

The New Hampshire Supreme Court has defined the term "accident" for insurance policy purposes as "an undesigned contingency, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not

naturally to be expected." EnergyNorth Natural Gas v. Cont'l Ins. Co., 146 N.H. 156, 160 (quoting Vermont Mut. Ins. Co. v. Malcolm, 128 N.H. 521, 523 (1986)). The New Hampshire Supreme Court has also construed "accident" as "circumstances, not necessarily a sudden and identifiable event, that were unexpected or unintended from the standpoint of the insured." High Country Assocs. v. N.H. Ins. Co., 139 N.H. 39, 44 (1994)).

Nothing in the record definitively establishes the cause of the alleged overflowing toilets. Cam-Sam posits that the overflowing toilets were caused by D La Pooch employees disposing of dog feces in the toilets. See Document No. 44-2, ¶ 10. That means of disposal allegedly clogged the toilets, causing them to overflow. Whether D La Pooch's disposal methods can be properly characterized as an "accident" is questionable, but neither party directly addresses the issue. However, to the extent overflowing toilets was caused by improper or negligent flushing of animal waste, as discussed above, damages resulting directly or indirectly from animal waste are excluded from coverage. For that reason, water damage from overflowing toilets as alleged in the complaint is excluded from coverage.

For similar reasons, Cam-Sam cannot rely on the Policy's coverage for damage related to Fungus, Wet or Dry Rot, or Bacteria. The Policy covers such damages only when in turn

caused by a "specific cause of loss," or a flood. While "water damage" is explicitly included as a "specified cause of loss," as described, the "water damage" alleged by Cam-Sam does not fall within the Policy's definition.

### Conclusion

For the foregoing reasons, and for those given in defendant's memorandum in support of its motion, Merchant's motion for summary judgment (document no. 34) is **GRANTED**.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

July 8, 2019

cc: David W. Rayment, Esq.
    Jeffrey Christensen, Esq.
    Doreen F. Connor, Esq.
    Michele Carlucci Sears, Esq.
    Laura Nicole Carlier, Esq.
    Richard E. Heifetz, Esq.