UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Cam-Sam Real Estate Holding, LLC,
    Plaintiff

                                  Case No. 18-cv-433-SM
    v.                           Opinion No. 2019 DNH 107

Merchants Mutual Insurance Company
and Hartford Fire Insurance Company,
    Defendants

Sentinel Insurance Company, Ltd.
a/k/a Hartford Fire Insurance Company,
    Counter Claimant and
    Third Party Plaintiff

    v.

Cam-Sam Real Estate Holding, LLC,
    Counter Defendant,

    and

D La Pooch Hotel, LLC, n/k/a
D La Pooch Resort, LLC, and
Lindsey Todt,
    Third Party Defendants


**O R D E R**

In this insurance coverage dispute, Sentinel Insurance
Company, Limited (improperly named as Hartford Fire Insurance
Company) ("Sentinel") moves for summary judgment that Sentinel
has no obligation to provide coverage, and no duty to defend or
indemnify with regard to the claims asserted in the complaint.
Cam-Sam Real Estate Holding, LLC, ("Cam-Sam") and D La Pooch

Hotel, LLC, ("D La Pooch"), along with Lindsey Todt, object. For the reasons discussed, Sentinel's motion is granted.

## Background

Cam-Sam is the owner of a multi-unit commercial building and property located at 21 Londonderry Turnpike, in Hooksett, New Hampshire. On June 2, 2016, Cam-Sam rented Unit 1 of the building to D La Pooch for a term of five years. D La Pooch operated a pet daycare and grooming business in the leased premises.

The lease between Cam-Sam and D La Pooch required D La Pooch to obtain "comprehensive liability insurance on the Leased Premises" carried "in the name of and for the benefit of Tenant and Landlord," written on "an occurrence" basis. Document No. 15, ¶ 10. The lease further mandated the following with respect to coverage: at least $1,000,000 "in case of death or injury to one person;" $1,000,000 "in case of death or injury to more than one person in the same occurrence;" and $250,000 "in case of loss, destruction or damage to property." Document No. 15, ¶ 10.

D La Pooch obtained insurance coverage from Sentinel. The policy issued by Sentinel consists of three types of coverage: (1) Commercial General Liability/Pet Groomer's Professional

Liability; (2) Workers Compensation and Employers' Liability; and (3) Building and Business Personal Property. The Commercial General Liability coverage and Building and Business Personal Property coverage both fall within policy number "81 SBA PP8836" (the "Policy"). The Worker's Compensation and Employers' Liability coverage is policy number 81WECBQ7144. Cam-Sam is an additional insured with regard to the Policy's Commercial General Liability coverage.

Cam-Sam contends that, during its tenancy, D La Pooch caused extensive damage and contamination of Unit 1 by, <u>inter alia</u>, failing to properly clean up after the pets, and failing to exercise reasonable care in its use of the plumbing and water fixtures. After unsuccessfully attempting to work with D La Pooch to solve the problem, Cam-Sam began eviction proceedings. D La Pooch vacated Unit 1 on or about August 20, 2017. Cam-Sam then discovered the extent of the damage. Unit 1 was severely contaminated by pet urine and feces. And, water from overflowing toilets and spillage/seepage had caused substantial damage. Those damages required significant repairs, including: removal of all building materials from Unit 1 down to the building's shell; remediation of odor, mold and bacteria in the air and duct system; and shot blasting the concrete floor.

Cam-Sam filed suit against D La Pooch, asserting claims for negligence and breach of contract. Cam-Sam contends that D La Pooch breached its lease agreement with Cam-Sam by:

- Failing to make monthly rental and fit-up payments;

- Allowing noxious fumes to permeate the building materials;

- Injuring and defacing Unit 1;

- Allowing dog urine and feces to permeate into Unit 1's building materials;

- Engaging in "extra hazardous" activities by failing to properly contain and clean up dog urine, feces and other noxious waste;

- Failing to return Unit 1 to Cam-Sam in the "same condition . . . as at the commencement of the term;" and

- Breaching the lease by vacating the premises before expiration of the lease term.

Document No. 10, Exh. 2. In support of its negligence claim, Cam-Sam alleges that Cam-Sam breached its duty to exercise reasonable care in the operation of its business by failing to regularly clean up animal waste, or take precautions to prevent its escape into the building's materials. Cam-Sam also sought contractual attorney's fees, and to hold Lindsey Todt, D La Pooch's owner, personally liable for all sums due under the lease (under a personal guarantee executed by Todt). Id. In response, D La Pooch and Todt asserted counterclaims against Cam-Sam for breach of contract, and breach of the implied

covenant of good faith and fair dealing. <u>See</u> Document No. 10, Exh. 3.

Cam-Sam also filed this declaratory judgment action against Merchants Mutual, Cam-Sam's insurer, and Sentinel. Sentinel now seeks summary judgment, contending that it has no coverage obligations under its policy.

## **Legal Standard**

When ruling on a motion for summary judgment, the court must "constru[e] the record in the light most favorable to the nonmoving party and resolv[e] all reasonable inferences in that party's favor." <u>Pierce v. Cotuit Fire Dist.</u>, 741 F.3d 295, 301 (1st Cir. 2014). Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this context, "[a]n issue is 'genuine' if it can be resolved in favor of either party, and a fact is 'material' if it has the potential of affecting the outcome of the case." <u>Xiaoyan Tang v. Citizens Bank, N.A.</u>, 821 F.3d 206, 215 (1st Cir. 2016) (citations and internal punctuation omitted). Nevertheless, if the non-moving party's "evidence is merely colorable, or is not significantly probative," no genuine dispute as to a material fact has been proved, and "summary judgment may be granted." <u>Anderson v. Liberty Lobby, Inc.</u>, 477

U.S. 242, 249-50 (1986) (citations omitted).  In other words,

"[a]s to issues on which the party opposing summary judgment

would bear the burden of proof at trial, that party may not

simply rely on the absence of evidence but, rather, must point

to definite and competent evidence showing the existence of a

genuine issue of material fact."  Perez v. Lorraine Enterprises,

Inc., 769 F.3d 23, 29-30 (1st Cir. 2014).


The key, then, to defeating a properly supported motion for

summary judgment is the non-movant's ability to support his or

her claims concerning disputed material facts with evidence that

conflicts with that proffered by the moving party.  See

generally Fed. R. Civ. P. 56(c).  It naturally follows that

while a reviewing court must take into account all properly

documented facts, it may ignore a party's bald assertions,

speculation, and unsupported conclusions.  See Serapion v.

Martinez, 119 F.3d 982, 987 (1st Cir. 1997).

**Analysis**

"The interpretation of insurance policy language, like any

contract language, is ultimately an issue of law for this court

to decide."  Mellin v. N. Sec. Ins. Co., Inc., 167 N.H. 544, 547

(2015) (quoting Amica Mut. Ins. Co. v. Mutrie, 167 N.H. 108, 111

(2014)).  "Policy terms are construed objectively; and where the

terms are clear and unambiguous, we accord the language its natural and ordinary meaning." Mellin, 167 N.H. at 547 (quoting Barking Dog v. Citizens Ins. Co. of America, 164 N.H. 80, 83 (2012)). "Where disputed terms are not defined in the policy, we construe them in context, and in the light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured." Mellin, 167 N.H. at 547 (quoting Great Am. Dining v. Philadelphia Indem. Ins. Co., 164 N.H. 612, 625, (2013)).

As mentioned, the Policy consists of three parts: (1) Commercial General Liability/Pet Groomer's Professional Liability; (2) Workers Compensation and Employers' Liability; and (3) Building and Business Personal Property. Only two of those parts are relevant to the parties' dispute: the "Building and Business Personal Property" coverage ("Property Coverage"), which the Policy also calls "Special Property Coverage;" and the Commercial General Liability coverage ("Liability Coverage").

### 1. **Property Coverage**

The Policy's Property Coverage includes coverage for physical damage to "Covered Property." Sentinel argues that there is no Property Coverage for the alleged damage to the leased premises because the premises do not qualify as "Covered

Property" under the Policy.  The Policy defines "Covered

Property" as "property for which a Limit of Insurance is shown

in the Declarations," including "Buildings" and "Business

Personal Property."  Document No. 10-1, p. 28.  And, the Policy

defines "Buildings" as "only building(s) and structure(s)

described in the Declarations."  Id.

        Turning then to the section of the Declarations pertaining

to "Building and Business Personal Property," with respect to

"Buildings," the Declarations expressly state: "no coverage."

Id., at p. 10, 12.  The Declarations provide coverage for

"Business Personal Property" up to $9,200, and for "Money and

Securities," inside and outside the premises totaling $15,000.

D La Pooch also elected to buy optional property coverage,

including $20,000 in Animal Bailee coverage (with a $2,500

limit/animal), up to $21,000 in coverage for "Tenant

Improvements and Betterments," and "Limited Fungi, Bacteria or

Virus Coverage" up to $50,000.  Thus, D La Pooch did not

purchase property insurance to cover the leased premises.

Instead, D La Pooch obtained "personal property" insurance.  Id.

The Policy's Declarations are unambiguous.

        There is some confusion among the parties due to the

multiple types of coverage provided by Sentinel in the Policy.

Cam-Sam, for example, conflates the Policy's Property Coverage

with the Policy's Liability Coverage in support of its position that its damages are covered. As Sentinel points out, Cam-Sam relies on language from the Declarations concerning the Policy's Liability Coverage (specifically, language which provides coverage for "Damage to Premises Rented to You" of up to $1,000,000). However, that section of the Declarations setting forth the <u>Property</u> Coverage that D La Pooch purchased is clear: the Policy's Property Coverage applies only to D La Pooch's personal property within the leased premises. The damages alleged by Cam-Sam do not fall within that coverage.

### 2. **Liability Coverage**

Cam-Sam and D La Pooch fare no better under the Policy's Liability Coverage. The Liability Coverage does, as the Declarations state, cover property damage to "Premises Rented by [D La Pooch]" of up to $1 million. However, argues Sentinel, that coverage is limited to premises that are rented by D La Pooch for less than seven days.

D La Pooch's Liability Coverage is set forth in the "Business Liability Coverage Form." Sentinel is obligated to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance

applies." Document No. 10-1, p. 55. However, the form excludes from coverage:

> k.  Damage to Property
>
>    "Property damage" to:
>
>    (1)  Property you own, rent or occupy, including any
>         costs or expenses incurred by you, or any other
>         person, organization or entity, for repair,
>         replacement, enhancement, restoration or
>         maintenance of such property for any reason,
>         including prevention of injury to a person or
>         damage to another's property.
>
>                               . . .
>
>         Paragraph[] (1) . . . of this exclusion [does]
>         not apply to "property damage" (other than damage
>         by fire) to premises, including the contents of
>         such premises, rented to you for a period of 7 or
>         fewer consecutive days.  A separate Limit of
>         Insurance applies to Damage to Premises Rented to
>         You as described in Section D. – Limits of
>         Insurance.

Document No. 10-1, p. 61. Because the property at issue was leased to D La Pooch for longer than seven days, argues Sentinel, the limited exception does not apply.

"Normally, a liability policy does not cover damage to the insured's property or property within his control." First Londonderry Dev. Corp. v. CNA Ins. Companies, 140 N.H. 592, 594, (1995). "A primary function served by Owned or Leased Premises Exclusion (k) 'is to prevent the insured from using a liability insurance policy as if it provided property insurance." Dryden

Oil Co. of New England, Inc. v. Travelers Indem. Co., 91 F.3d
278, 284 (1st Cir. 1996) (quoting Kenneth S. Abraham,
Environmental Liability Insurance Law 163 (1991)). Cf., Skorka
v. Amica Mut. Ins. Co., 132 N.H. 208, 210 (1989) ("Normally, a
liability policy does not cover damage to the insured's property
or property within his control. If an insured desires coverage
on property that he owns or that is in his charge, he must
secure collision or comprehensive coverage and pay an additional
premium.") (quoting Security Mut. Cas. Co. v. Johnson, 584
S.W.2d 703, 705 (Tex. 1979)). The Owned or Leased Premises
Exclusion "likewise insulates against 'the moral hazard problem
where an insured has less incentive to take precaution owing to
the existence of insurance.'" Dryden Oil Co., 91 F. 3d at 284
(quoting Barry R. Ostrager & Thomas R. Newman, Handbook on
Insurance Coverage Disputes § 10.03[b], at 441 (8th ed. 1995))
(further quotations omitted).

Cam-Sam argues that the seven-day limitation is
inapplicable because it is not found in the Declarations, or in
the provided Certificate of Insurance. D La Pooch goes a step
further, arguing that the seven-day limitation conflicts with
the Policy's Declarations. Neither argument is persuasive.

The Policy's Declarations are not a complete description of
the coverage provided by the Policy. Instead, the Declarations

succinctly summarize the Policy's terms.  See McGair v. Am.
Bankers Ins. Co. of Fla., 693 F.3d 94, 101 n.6 (1st Cir. 2012)
("The description offered by the Declarations Page was only a
summary, subject to exclusions and limitations contained in the
policy itself.").  The Declaration states that D La Pooch's
Liability Coverage includes coverage for "Damages to Premises
Rented to You" of up to $1 million.  But, the Declarations also
state: "This Spectrum Policy consists of the Declarations,
Coverage Forms, Common Policy Conditions and any other Forms and
Endorsements issued to be a part of the Policy."  Document No.
10-1, p. 9.  Finally, the Declarations expressly note the
application of Form SS 00 08 04 05, in which "Exclusions"
applicable to Business Liability Coverage are depicted,
including the Owned or Leased Premises Exclusion.  Id. at p. 16.
Thus, the Declarations make evident that other documents are
applicable to – and may affect – the coverage disclosed in the
Declarations pages.

Moreover, an insurance policy must be read "as a whole."
Great Am. Dining, 164 N.H. at 619.  See also 2 Couch on Ins. §
21:19 ("Coverage of an insurance contract cannot be analyzed in
a vacuum; the policy must be construed in its entirety, with
each clause interpreted in relation to others contained
therein.").  Read as a whole, the Policy covers damage to

premises rented by D La Pooch, as the Declaration indicates.
But, the Policy unambiguously limits that coverage to premises
rented by D La Pooch for a period of less than seven days.

That the Policy's exclusions operate to limit the coverage
provided does not necessitate a finding that the Declarations
and Policy are in conflict, or that the Policy is ambiguous.
Cf., Merchants Ins. Grp. v. Warchol, 132 N.H. 23, 27 (1989) ("if
an insurance policy contains an exclusion purporting to limit a
broad general grant of coverage, the exclusion must be 'in terms
which would effectively convey [it] to a reasonable person in
the position of the insured.'") (quoting Royal Globe Ins. Co. v.
Poirer, 120 N.H. 422, 427 (1908) (further quotations omitted)).
Indeed, the language of the Owned or Leased Premises Exclusion
is not ambiguous; it precludes coverage for the damage at issue.
See First Londonderry Dev. Corp., 140 N.H. at 595 ("When an
exclusion purporting to limit a general grant of coverage is in
terms that would effectively convey its meaning to a reasonable
insured, it will ordinarily be given effect.") (citations
omitted).

### 3.   **Third Part Liability Coverage**

Finally, Cam-Sam's claims against D La Pooch concerning
breach of the lease, contractual attorney's fees and Todt's
personal guarantee are not covered by the Policy.  Those claims

seek damages for economic losses (lost rent), not damages due to "bodily injury," or "property damages" or "personal and advertising injury," as defined by the Policy. Nor do those claims constitute an "occurrence" under the Policy. Similarly, D La Pooch's claims against Cam-Sam are claims for economic losses, and are not covered by the Policy.

## Conclusion

For the foregoing reasons, and for those given in defendant's memorandum in support of its motion, Sentinel's motion for summary judgment (document no. 42) is **GRANTED**.

**SO ORDERED.**

_Steven J. McAuliffe_
Steven J. McAuliffe
United States District Judge

July 8, 2019

cc:  David W. Rayment, Esq.
     Jeffrey Christensen, Esq.
     Doreen F. Connor, Esq.
     Michele Carlucci Sears, Esq.
     Laura Nicole Carlier, Esq.
     Richard E. Heifetz, Esq.